CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
February 18, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL JOHN DEEGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-301 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BRYAN F. HUTCHESON, *et al.* | ) | By:   Hon. Thomas T. Cullen |
| | ) |           United States District Judge |
| Defendants. | ) | |

Michael Deegan, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Rockingham County Sheriff Bryan Hutcheson and three Rockingham Harrisonburg Regional Jail ("RHRJ") employees (collectively, "Defendants").[1] This matter is before the court on Deegan's motion for issuance of subpoenas (ECF No. 16), Defendants' motion for summary judgment (ECF No. 17), and Defendants' motion for protective order (ECF No. 33). Defendants argue in their motion for summary judgment that Deegan's claim is barred by his failure to exhaust the available administrative remedies. They argue in their motion for protective order that discovery unrelated to Deegan's exhaustion of administrative remedies should be stayed pending resolution of the exhaustion issue. After review of the parties' submissions and the applicable law, the court will deny Defendants' motion for summary judgment and refer this case to United States Magistrate Judge Joel Hoppe for an evidentiary hearing to determine whether Deegan properly exhausted his administrative remedies. The court will further grant Defendants' motion for protective order and take

---

[1] Deegan is currently incarcerated at Dillwyn Correctional Center.

Deegan's motion for issuance of subpoenas under advisement pending final resolution of the exhaustion issue.

## I. STATEMENT OF FACTS

Deegan was transferred to RHRJ on September 1, 2023. (Compl. at 2 [ECF No. 1].) When he got there, he explained all his medical and mental-health issues to the nurse conducting his medical intake. (*Id.*) He also provided a list of his medications, which included Bupropion and Hydroxyzine, and signed a medical release form so that prison staff could obtain his prior medical records. (*Id.* at 3.) He was prescribed these medications in 2020 after his then-undiagnosed depression and anxiety led him to attempt suicide. (*Id.* at 4.)

On October 3, 2023, he met with Nurse Alicia Harpine regarding his prescriptions because he had not been given Bupropion or Hydroxyzine since arriving at RHRJ. (*Id.* at 3.) Nurse Harpine emailed Nurse Practitioner Michelle Woods to obtain approval for the medications. (*Id.*) Deegan followed up with Nurse Harpine on October 30, because he still had not received his medications, but Nurse Harpine had no information or news from Nurse Practitioner Woods. (*Id.*) There is nothing in Deegan's allegations to indicate that he was given Bupropion or Hydroxyzine at any point since then, and he affirmatively alleges that he had not been given his medication at the time he filed suit in this court. (*Id.* at 7.)

Deegan alleges he submitted two administrative grievances regarding his missing medication: one on November 25, 2023, and one on December 25, 2023. (*Id.* at 3–4.) He asserts that, on November 25, he gave the grievance form to Sergeant Haviland (also known as "Sergeant Country"), and on December 25, he gave the grievance form to an unnamed corrections officer. (Pl.'s Resp. Mot. Summ. J. at 2 [ECF No. 20].) On both days, he requested

that the officer provide him with a copy of the form. (*Id.*) According to Deegan, the officers both told him that providing a copy to the inmate "was not policy." (*Id.*) He further alleges that he has not received a response to either grievance. (Compl. at 3–4.)

With their motion for summary judgment, Defendants filed a sworn affidavit from Defendant Captain Jimmy Wimmer, an employee of Sheriff Hutcheson whose duties include operation of RHRJ. (Decl. of Jimmy Wimmer ¶ 1, Aug. 1, 2024 [ECF No. 18-1].) Wimmer asserts that inmates are educated on RHRJ's administrative grievance procedures—detailed in Section 17 of the RHRJ Handbook—when they arrive at RHRJ. (*Id.* ¶ 4.) The handbook is given to all inmates and is available for viewing on RHRJ's electronic kiosks. (*Id.*) Section 17 requires grievances to be filed "within three days of the grievance issue." (*Id.* ¶ 6.) Inmates are required to "first make an effort to verbally resolve the situation with the officer assigned to the inmate's housing unit." (*Id.* ¶ 7.) If that attempt is unsuccessful, the inmate must submit an "Inmate Request," which is the first level of the grievance procedure. (*Id.*)

Assuming that the inmate is not satisfied with a response to his Inmate Request (Wimmer's affidavit is unclear), the inmate must request an Inmate Grievance Form from a jail deputy and include the identification number of the answered Inmate Request, which is available to the inmate on RHRJ's kiosk system. (*Id.* ¶ 8.) Section 17 directs the jail deputy to forward the grievance form to the shift supervisor, who in turn forwards it to the jail lieutenant. (*Id.* ¶ 9.) The jail lieutenant must respond to the grievance form in writing within 9 days, and his decision is appealable to the jail captain or his designee who likewise has 9 days to respond. (*Id.* ¶¶ 9–10.) The final appeal is to the Sheriff or his designee. (*Id.* ¶ 11.) The Sheriff's appeal is final, and an inmate exhausts his remedies only after he has appealed to the Sheriff. (*Id.* ¶¶

11, 16.) Further, if an inmate does not receive a response to his grievance or any appeal within the allotted time for a response, he should send an Inmate Request through RHRJ's grievance system asking if the grievance or appeal has been received or processed. (*Id.* ¶ 14.) Wimmer asserts that "[i]t is the inmate's responsibility to ensure the grievance and/or appeal is received by the proper responding party" (*id.*), but Section 17 includes no such requirement or directive (*see id.* Ex. A-A).

Defendants assert that, under Section 17, the deadline for Deegan to submit his administrative grievance was November 2, 2023, three days after he met with Nurse Harpine. (*Id.* ¶ 18.) They further assert that Deegan never filed the grievance forms he alleges he gave to Sergeant Haviland on November 25 and December 25, 2023. (*Id.* ¶ 28.) Sergeant Haviland submitted an affidavit asserting that he does not recall receiving a grievance from Deegan. (Decl. Sgt. Haviland ¶ 4, Aug. 28, 2024 [ECF No. 23-1].) If he had, Sergeant Haviland maintains that he would have forwarded the grievance to a jail lieutenant as he does "with all other grievances received from inmates." (*Id.*)

Deegan filed suit under 42 U.S.C. § 1983 in this court on May 6, 2024. He alleges that prison staff were deliberately indifferent to his medical needs in violation of the Eighth Amendment by failing or refusing to give him his prescribed medications. He seeks both injunctive relief—requesting that the court order Defendants to provide him his medication—and compensatory and punitive damages. (Compl. at 6–7.) On July 15, 2024, Deegan filed a motion asking the court to issue a subpoena to RHRJ for his medical records, which he asserts contain relevant discovery concerning his claim. (ECF No. 16.)

On August 5, 2024, Defendants moved for summary judgment, arguing that Deegan failed to properly exhaust his administrative remedies. (ECF No. 17.) Deegan responded on August 19, 2024, though his response was not verified. (*See generally* Pl.'s Resp. Mot. Summ. J.) In his response, he argues that he should be excused from the exhaustion requirement because the administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act ("PLRA"). (*Id.* at 1.) Defendants filed a reply on September 4, 2024, pointing out that the response was not verified, and that the court therefore could not consider the additional facts alleged therein. (Reply Mot. Summ. J. at 1 [ECF No. 23].) Deegan then filed a short declaration retroactively verifying his response. (Decl. Michael Deegan [ECF No. 24].) He also filed a second response expressing his continued opposition to Defendants' motion for summary judgment and asserting that he can present evidence from several witnesses who saw him submit grievance forms on November 25 and December 25, 2023. (ECF No. 25.)

On October 31, 2024, Deegan sent a letter to the clerk of this court requesting copies of subpoena forms. (ECF No. 31.) Defendants then moved for a protective order staying discovery unrelated to Deegan's exhaustion of administrative remedies until the exhaustion issue is resolved. (ECF No. 33.) On December 9, Deegan filed a response in opposition to the motion for protective order, as well as three requests for subpoenas. (ECF Nos. 36–39.) Defendants filed a reply regarding the motion for protective order on December 16. (Reply Mot. Protective Order [ECF No. 40].)

## II.  STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). The court "may not weigh the evidence or make credibility determinations." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation omitted). Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

A *pro se* litigant's verified complaint and other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III. ANALYSIS

#### A. Motion for Summary Judgment

In their reply regarding the motion for summary judgment, Defendants assert that the court should disregard the factual allegations in Deegan's response to the motion for summary judgment because the response was not signed under penalty of perjury. (Reply Mot. Summ. J. at 1.) Subsequently, Deegan submitted a signed declaration in which he retroactively verified the response, which states, "I, Michael John Deegan, plaintiff declares [sic] under penalty of perjury that the plaintiff's Memorandum of Support [ECF 20] is true and correct. Executed on September 7, 2024." (Decl. Michael Deegan at 1.)

28 U.S.C. § 1746 sets forth that wherever

> any matter is required or permitted to be supported, evidenced, established, or proved by the sworn . . . verification . . . in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . . .

> If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

28 U.S.C. § 1746; *see also Humple v. Hilewitz*, No. 2:13-cv-14618, 2015 WL 5474237, at *3 (S.D.W.V. Sept. 16, 2015). There is no requirement that the declaration be made at the same time as the factual allegations. *Cf.* Fed. R. Civ. P. 56(c)(4). Therefore, Deegan's declaration is legally sufficient to retroactively verify his response, and the court will consider the factual allegations therein.

The PLRA requires inmates seeking to file suit "with respect to prison conditions under section 1983" to exhaust "such administrative remedies as are available" before filing an action in court. 42 U.S.C. § 1997e(a); *see Jones v. Bock* 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."). "To comply with § 1997e(a), an inmate must properly follow each step of the established grievance procedure that the facility provides to inmates and meet all deadlines within that procedure before filing his § 1983 action." *Muhammad v. Fleming*, No. 7:17cv00481, 2023 WL 6456486, at *2 (W.D. Va. Sept. 30, 2023). "An 'untimely or otherwise procedurally defective administrative grievance' does not satisfy the PLRA's exhaustion requirement." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006)).

Defendants contend that Section 17 required Deegan to submit a grievance by November 2, 2023, which is three days after he met with Nurse Harpine to follow up regarding his medications. (Mem. Supp. Mot. Summ. J. at 5 [ECF No. 18].) But that contention misunderstands Deegan's complaint. Section 17 imposes no such deadline here because Deegan's complaint is not that Nurse Harpine refused to give him his medication on October

30. Rather, he asserts that Defendants were deliberately indifferent by failing to give him his medication *throughout his time at RHRJ* and up until the date on which he filed suit in this court. (*See* Compl. at 7.) As alleged, Defendants' allegedly unconstitutional conduct continued past October 30 and up until at least May of 2024. (*Id.*) Therefore, Deegan could have satisfied Section 17's requirement to file a grievance "within three days of the grievance issue," at any point before he filed suit, because "the grievance issue"—Defendants' failure to give him his medication—persisted throughout that time. (*See* Wimmer Decl. Ex. A-A.)

Therefore, the questions the court must resolve are (1) whether Deegan exhausted his administrative remedies at any time prior to filing suit on May 6, 2024, and (2) if not, whether his failure to exhaust is excused by the fact that the administrative grievance process was unavailable to him. It is undisputed that Deegan did not exhaust his administrative remedies by appealing a decision all the way to the Sheriff. Therefore, the remaining question is whether the administrative grievance process was unavailable to him.

An administrative remedy is "unavailable" for purposes of the PLRA where "prison administrators thwart inmates from taking advantage of a grievance process . . . ." *Ross v. Blake*, 578 U.S. 632, 644 (2016). Deegan alleges that he gave a grievance form to Sergeant Haviland on November 25, 2023, and to another unnamed corrections officer on December 25, 2023. (Pl.'s Resp. Mot. Summ. J. at 2.) Deegan also alleges that the Sergeant Haviland and the other officer never forwarded his grievance (*id.*)—as Section 17 directs them to do (Decl. Jimmy Wimmer ¶ 9)—thereby "thwart[ing]" his ability to "tak[e] advantage of the grievance process." *See Ross*, 578 U.S at 644. Defendants argue that these allegations are too conclusory to prove that Deegan did not have access to the grievance procedure. (Reply Mot. Summ. J at 2.) The

- 9 -

court disagrees. Deegan specifically alleges when, where, and to whom the grievance form was submitted, but that the form was never properly filed after he submitted it. (Pl.'s Resp. Mot. Summ. J. at 2.) If true, these factual allegations sufficiently show that the administrative process was unavailable to Deegan, thereby excusing his failure to exhaust.

But the affidavit from Sergeant Haviland that Defendants submitted tells a different story. Sergeant Haviland asserts that he does not recall receiving a grievance from Deegan and that, if Deegan had submitted a grievance to him, Sergeant Haviland would have forwarded it to a jail lieutenant as he does "with all other grievances received from inmates." (Decl. Sgt. Haviland ¶ 4.) Taking Defendants' and Deegan's factual allegations together, the record evinces a genuine dispute of material fact as to whether Deegan properly exhausted his administrative remedies, which prevents the court from granting summary judgment to Defendants on the issue of exhaustion. *See* Fed. R. Civ. P. 56(a). Accordingly, Defendants' motion for summary judgment will be denied.

To resolve this factual dispute and determine whether Deegan's failure to exhaust is excused because the grievance process was unavailable to him, the court will refer this matter the Judge Hoppe for an evidentiary hearing. *See* 28 U.S.C. § 636(b)(1)(B). In accordance with 28 U.S.C. § 636(b)(1)(B), Judge Hoppe will submit to this court "proposed findings of fact and recommendations for the disposition" on the issue of Deegan's exhaustion of administrative remedies. *See id.*

### B. Motions Relating to Discovery

Defendants also moved for a protective order staying "discovery on matters unrelated to the exhaustion of administrative remedies." (Mem Supp. Mot. Protective Order at 1 [ECF

No. 34].) "A protective order under Rule 26(c) to stay discovery pending determination of a dispositive motion is an appropriate exercise of the court's discretion." *Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003). In determining whether to issue a stay on merits-based discovery during the resolution of a dispositive motion concerning the plaintiff's exhaustion of administrative remedies, "the court considers factors such as the potential for the dispositive motion to terminate all the claims in the case or all the claims against particular defendants, strong support for the dispositive motion on the merits, and irrelevancy of the discovery at issue in the dispositive motion." *Drayton v. Newman*, No. 7:22-cv-574, 2023 WL 2405590, at *2 (W.D. Va. Mar. 8, 2023) (cleaned up). Having considered those factors, the court concludes that a stay on discovery unrelated to Deegan's exhaustion of administrative remedies is appropriate here. If the court ultimately concludes that the administrative grievance process was not unavailable to Deegan, meaning that he did not properly exhaust, then his claims will be terminated. Discovery on all other matters is irrelevant at this point. Therefore, the court will grant Defendants' motion.

In light of that conclusion, the court will take Deegan's motion for issuance of subpoenas—which requests his medical records and is therefore not relevant to the issue of exhaustion—under advisement pending resolution of the issue of exhaustion. Deegan may, however, request and obtain discovery relating to the issue of exhaustion, which includes subpoenaing witnesses to appear at an evidentiary hearing once a date for that hearing has been set.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied, this matter is referred to Judge Hoppe for an evidentiary hearing as to whether Deegan properly exhausted his administrative remedies, Defendants' motion for protective order is granted, and Deegan's motion for issuance of subpoenas is taken under advisement pending final resolution of the exhaustion issue.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties and to Judge Hoppe.

**ENTERED** this 18th day of February, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE